Day, Presiding Commissioner,
delivered the opinion of the Panel:
This Congressional claim was referred pursuant to the provisions of Public Law No. 89-681, 89th Cong., 2d Sess., 80 Stat. 958, to the Office of Chief Commissioner of the Court of Claims for Congressional Reference Cases, by H. Res. 508, approved September 11, 1967. This is the first case referred by Congress and reported back pursuant to the enabling act.
Chief Commissioner Marion T. Bennett duly referred this case to Commissioner W. Ney Evans for proceedings in accordance with the Rules of the Chief Commissioner, and designated as members of the Review Panel, Presiding Commissioner William E. Day, Commissioners Roald A. Hogen-son and C. Murray Bernhardt.
On November 20, 1968, Commissioner Evans reported his decision. By a stipulation of the parties filed with the Clerk on December 13, 1968, the Review Panel has been requested to adopt such decision without further proceedings. Since the members of the Review Panel unanimously agree with Commissioner Evans’ opinion, findings of fact and conclusions, as 'hereinafter set forth, they adopt the same as the basis for their recommendation in this case.
Therefore, it is recommended that Congress authorize and direct the payment to Frances von Wedel, plaintiff herein, of *939 the sum of $35,625.11 in full settlement of bet equitable claim against the defendant.
This determination is accordingly submitted to the Chief Commissioner for transmittal to the United States House of Eepresentatives.
Opinion
Evans, Commissioner:
By this Congressional Eeference, the House of Eepresentatives asks advice, through the Office of the Chief Commissioner of the Court of Claims for Congressional Eeference Cases, whether the claim of the plaintiff, Mrs. Frances von Wedel, is a legal or equitable claim, or a mere gratuity. On the basis of the findings of fact, and particularly the conclusions set forth in findings 8 and 9, it is concluded (1) that plaintiff has no legal claim against the United States, but (2) that she does have an equitable claim, founded on equity and justice within the meaning of Burkhardt, et al. v. United States, 113 Ct. Cl. 658 (1949), 84 F. Supp. 553, in the amount of $35,625.11.
A summary of the facts follows. The plaintiff, Mrs. von Wedel, an American citizen, was married in 1931 to Carl von Wedel, a German national living in the United States. In July 1939, they went to Europe because of the illness of his mother. She returned to the United States in December 1939, but he remained in Germany, serving as an officer in the German army for the duration of the war. Thereafter, he returned to the United States and, reunited with his wife, lived with her until his death in 1952.
In June 1939, before leaving the United States, Mr. and Mrs. von Wedel opened a joint securities account in New York in an amount slightly in excess of $24,000. At about the same time, Mr. von Wedel executed and delivered a power of attorney to a lawyer who was also a personal friend, authorizing the attorney in fact to do for the principal whatever the principal might do for himself. Mr. von Wedel had property other than the joint securities account, and Mrs. von Wedel then (or later) had some property of her own, including a separate bank account.
In 1940, the attorney in fact transferred the joint securities *940 account to the sole name of Mrs. von Wedel, and she, at times unspecified, made some small additions to the account.
In 1947, the Attorney General of the United States, as successor to the Alien Property Custodian, issued a vesting order taking over von Wedel property of the value, in liquidation, in excess of $108,000. The vesting included the joint securities account and Mrs. von Wedel’s personal bank account.
Mrs. von Wedel filed suit in the district court of New Jersey to reclaim such of the vested property as had been given to her by the attorney in fact. The district court dismissed the complaint for failure to state a claim on which relief could be granted, and the court of appeals sustained the ruling. Both opinions are cited and summarized in the findings of fact.
In the course of the present proceeding, based upon Mrs. von Wedel’s allegation of equitable claim to all or portions of the vested property, the attorneys for the parties have sorted out the portions of such property to which Mrs. von Wedel has a claim, in equity and justice, albeit, as the attorneys further agree, she has no legal claim therefor. These portions add up to the sum of $35,625.11, as noted in the opening paragraph of this opinion and as detailed in finding 5(b).
It is therefore recommended that the Panel advise the House of Representatives, through the Office of the Chief Commissioner, that:
1. The plaintiff has no legal claim against the United States in the premises.
2. Under the standards of Burkhardt, et at. v. United States, 113 Ct. Cl. 658 (1949), 84 F. Supp. 553, the plaintiff does have an equitable claim (based on equity and justice) in the amount of $35,625.11.
Findings oe Fact
1. (a) By order of the Chief Commissioner of the United States Court of Claims for Congressional Reference cases,[1] *941 dated December 28,1967, this matter was referred to the undersigned Commissioner for proceedings in accordance with the Eules of the Chief Commissioner, including the designation of a Eeview Panel consisting of Presiding Commissioner William E. Day, and Commissioners C. Murray Bernhardt and Boald A. Hogenson.
(b) The reference to the Chief Commissioner came from the House of Eepresentatives of the United States on September 21, 1967, by means of H. Ees. 508, approved September 11, 1967, wherein the House of Eepresentatives resolved:
That H. E. 1734 entitled “A bill for the relief of Frances von Wedel” together with all accompanying papers is hereby referred to the chief commissioner of the Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code, for further proceedings in accordance with applicable law.
(c) The test of H. E. 1734, 90th Congress, 1st session, a bill for the relief of Frances von Wedel, follows:
* * * the Secretary of the Treasury is authorized and directed to pay, out of any money remaining in the war claims fund created pursuant to section 13 of the War Claims Act of 1948, as amended (62 Stat. 1240), to Frances von Wedel, of Staten Island, New York, the moneys and proceeds of securities vested in and transferred to the Attorney General of the United States pursuant to vesting order numbered 10108 dated November 13, 1947, issued under the authority of the Trading With the Enemy Act, as amended: Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000.
(d) The adoption of H. Ees. 508 was based upon the recommendation of the Committee on the Judiciary of the House of Eepresentatives in House Eeport No. 591, 90th *942 Congress, 1st session, dated August 22, 1967. Prior thereto, on June 14, 1967, a hearing was held by a Subcommittee of the full committee.
The Committee Report stated that testimony was given to the Subcommittee indicating that a portion of the property vested by the United States represented assets of Mrs. Frances von Wedel. These assets allegedly included the personal earnings of Mrs. von Wedel, funds in her personal checking account, and proceeds from a joint securities account. The Committee Report indicated that this aspect of the case should be more fully investigated to determine the actual facts concerning any such assets, as well as a complete analysis of the legal implications concerning the wife’s rights as regards any such assets.
2. (a) Pursuant to the Rules of the Chief Commissioner, plaintiff’s petition was filed on December 19, 1967. As heretofore indicated, the reference to the undersigned by the Chief Commissioner followed on December 21, 1967. Defendant’s answer was filed on February 19,1968.[2]
(b) At a pretrial conference in the office of the undersigned Commissioner on April 5, 1968, the attorneys for the parties reported that they were in agreement upon the exchange of factual data and for further discussions looking toward a stipulation of a summary of the facts. Their stipulation was filed on November 8,1968.
(c) The stipulation refers to two reports of the litigation whereby the present plaintiff sought a court decree restoring to her certain funds and securities theretofore vested in the Attorney General of the United States as successor to the Alien Property Custodian, viz., von Wedel v. Clark, 84 F. Supp. 299 (D.N.J. 1949) and von Wedel v. McGrath, 180 F. 2d 716 (3d Cir.), cert denied, 340 U.S. 816 (1950).
(d) The findings of fact set forth hereinbelow, drawn primarily from the stipulation of the parties, are supplemented in part from the two reports above cited, which are, of course, subject to judicial notice.
3. (a) Mrs. Frances von Wedel, an American citizen residing in Staten Island, New York, has lived in the United *943 States continuously since 1923. In 1931, she married Carl von Wedel, a German national residing in the United States. The couple lived together in the United States until July 5,1939, when they traveled to Europe because of the serious illness of Mr. von Wedel’s mother.
(b) Mrs. von Wedel returned to the United States in December 1939, but her husband, being a member of the reserve, remained in Germany and served as an officer in the German army until the end of the war. Thereafter, he returned to the United States and remained here with Iris wife until his death in 1952.
4. (a) In June 1939, Mr. and Mrs. von Wedel had opened a joint securities account with Granberry & Company of New York City, with an initial investment of $24,253.75.
(b) Thereafter, but prior to July 5, 1939, Mr. von Wedel executed and delivered at New York City a general power of attorney[3] to his friend and lawyer, Pieter J. Kooiman, authorizing Mr. Kooiman “* * * to do any and all acts which I could do if personally present, hereby intending to give him the fullest power and not intending by anything hereinafter contained to limit or cut down such full power * * The power of attorney then referred to specific authorizations “* * * to demand, sue for, recover and receive * * *” property, “to execute * * * receipts, releases, and other discharges * * *, and to * * * execute, endorse, accept and deliver * * * all checks, notes * * * and * * * other instruments * * also “* * * to sell, transfer or do any other act concerning * * * stocks or bonds * * * and to transfer the same * * thereby “giving to * * * said attorney power and authority to do * * * all and singular those things which he shall deem expedient or necessary * * * as fully as * * * Carl * * * von Wedel could do if personally present, hereby ratifying and confirming whatever * * * said attorney shall do or cause to be done * *
(c) Pursuant to the foregoing power of attorney, the investment account described in paragraph (a) of this finding *944 was changed, in April 1940, to the sole name of Mrs. yon Wedel.
5. (a) On November 13,1947, the Attorney General of the United States issued Vesting Order No. 10108, ordering the seizure of moneys and securities of the von Wedels, the total liquidated value of which was $108,738.77. The seizure included all moneys and securities in the securities account described in paragraphs (a) and (c) of finding 4, and in a checking account with the Empire Trust Company, New York City, which had always been in Mrs. von Wedel’s name.[4]
(b) The parties have stipulated that, among the assets included in the seizure described in the preceding paragraph, Mrs. von Wedel “has an equitable claim against the United States and is entitled to receive * * *” the following :
1. One-half of the initial investment in the joint securities account_$12,126. 88
2. Two contributions made by Mrs. von Wedel directly to the securities account_ 2, 550. 00
2,000. 00
3. Mrs. von Wedel’s proportionate share in the securities account when vested_ 15, 229. 53
4. Money in her personal checking account_ 3, 718. 70
Total _ 35,625.11
6. (a) Mrs. von Wedel’s “* * * suit in equity * * * under section 9(a) of the Trading With the Enemy Act, 50 U.S.C.A. Appendix, §9(a), * * * to recover certain property vested in the Attorney General [then the Honorable Tom C. Clark] as successor to the Alien Property Custodian * * *” came before the United States District Court for the District of New Jersey on defendant’s motion to dismiss the complaint on the ground that it failed to state a claim on which relief could be granted, in that it appeared on the face of the complaint that the plaintiff had no interest, right or title within the meaning of section 9(a) of the Act.
*945 (b) On June 1,1949, the court sustained defendant’s motion and dismissed the complaint. In essence the court (1) found that plaintiff’s claim rested on the power of attorney and plaintiff’s allegation of Mr. von Wedel’s intention to authorize a gift, and (2) ruled that the terms of the power, although broad and sweeping, contained no specific authorization to make a gift, wherefore parol evidence of an intention to authorize a gift “would avail the plantiff nothing since the authorization must be found within the terms of the instrument itself.”
(c) The case was appealed under the style of von Wedel v. [the Honorable J. Howard] McGrath. The appellate court affirmed the ruling of the district court, listing “the all important question in the case” as “whether the power of attorney upon its face authorized a gift of the principal’s property.” Since the “language refers solely to von Wedel’s ordinary business affairs,” and since “it contains nothing that can be reasonably construed as authority for the attorney in fact to make gifts of von Wedel’s property,” the court said that “the principle of ejusdem generis squarely applies and the command of the specific language must be pursued with legal strictness.”[5]
7. Portions of the stipulation of the parties[6] not covered in the foregoing findings are set forth below.
(a) The sum of $35,625.11 is the only amount to which Mrs. von Wedel has any equitable or moral claim.
(b) Mrs. von Wedel has no legal claim against the United States.
*946 (c) No court has ever adjudicated any possible equitable interests of Mrs. von Wedel in these funds because the courts found she had no legal interest in the vested property.
(d) No facts exist in this case to warrant the removal of the bar of the Statute of Limitations or laches.
(e) Nothing in this stipulation or agreement binds the Internal Kevenue Service in its consideration or treatment of any tax liabilities resulting from any payment which may be made hereunder.
(f) This stipulation is made for the purpose of preparing a Eeport pursuant to Public Law 89-861, 80 Stat. 958 [7] for transmittal to the appropriate House of Congress. If this stipulation is rejected in whole or in part by the Panel or by the Congress of the United States, it is agreed that the entire stipulation shall then be null and void, and of no effect whatsoever.
(g) If the Congress should accept this report, and should authorize the Secretary of the Treasury to pay out of any money remaining in the War Claims Fund the sum of $35,-625.11 to Mrs. von Wedel, then Mrs. von Wedel, upon the payment thereof, releases and forever discharges the United States and the Attorney General of the United States as successor to the Alien Property Custodian from any and all claims, legal, equitable, or moral, which she may have against them, on account of matters set forth in her petition in this Congressional Eef erence case.
Conclusions
8. Plaintiff has no legal claim against the United States.
9. Under the standards of Burkhardt, et al. v. United States, 113 Ct. Cl. 658 (1949), 84 F. Supp. 553, plaintiff does have an equitable claim against the United States in the sum of $35,625.11. Cf., Town of Kure Beach v. United States, 168 Ct. Cl. 597 (1964).

 Title 28, U.S.C. §§ 792(a), 1492, and 2609, as amended by Pub. L. No. 89-681, 89tb Cong., 2d sess., October 15, 1966, 80 'Stat. 958.

 The answer denied that plaintiff had any legal or equitable claims against the united States.

 The test of the power of attorney is set forth in note 1, at page 717, of the report of von Wedel v. McGrath, supra.

 Fifty shares of Canadian Pacific Railway stock were delivered to the Canadian Government pursuant to intercustodial agreements between the United States and Canada. Since these assets are within the jurisdiction of the Canadian Government, no finding is made with respect to any possible equitable interest in them on behalf of Mrs. von Wedel.

 One of tlie three circuit judges, concurring in a separate opinion because he thought the result was supported by authority, said: “But it seems to me that the whole thing is incongruous. A man has said, in effect, that he gives another the power to do everything for him. Then he enumerates certain specific things which the other may do, carefully saying, however, that he does not mean to alter the general power by stating specific powers. Then he ends up by saying that he means his language to be as broad as he has stated it. Vet the tule seems to be that he is held to mean something much less than indicated by the language he used. Perhaps the law cannot quite say that white is black. But in this instance it certainly can make white look a pretty dark gray.”

 Filed November 8, 1968 ; finding 2(b).

 Cf. note 1, finding 1 (a).